**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**UNITED STATES OF AMERICA**                  **CASE NO.  3:24-CR-00269-01**

**VERSUS**                                                        **JUDGE TERRY A. DOUGHTY**

**DEMORION BAKER (01)**                       **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM ORDER**

Before the Court are two Motions in Limine [Doc. Nos. 89, 91] filed by Defendant, Demorion Baker ("Defendant"). The United States of America ("the Government") filed a response to both Motions [Doc. No. 96]. For the following reasons, the Defendant's first Motion [Doc. No. 89] is **GRANTED**. Defendant's second Motion [Doc. No. 91] is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background

The Government indicted Defendant on December 11, 2024, on one count of possession with intent to distribute cocaine (in violation of Title 21 United State Code, Sections 841(a)(1) and (b)(1)(B)(ii)), one count of possession with the intent to distribute methamphetamine (in violation of Title 21 United State Code, Sections 841(a)(1) and (b)(1)(A)(viii)), one count of possession with intent to distribute base cocaine (crack) (in violation of Title 21 United State Code, Sections 841(a)(1) and (b)(1)(A)(iii)), and one count of possession with intent to distribute schedule IV, alprazolam (in violation of Title 21 United State Code, Sections 841(a)(1) & (b)(2)).[1]

---

[1] [Doc. No. 1].

Additionally, Defendant was charged with one count of possession with intent to distribute marijuana (in violation of Title 21 United State Code, Sections 841(a)(1) and (b)(1)(D)), and one count of possession of firearms in furtherance of drug trafficking (in violation of Title 21 United State Code, Section 924(c)(1)(A)).[2] Defendant's trial is set for May 26, 2026.[3]

Defendant raises several challenges to the Government's proffered evidence. First, he argues that any statements from James Nelson ("Nelson"), a confidential informant who has since passed away, should be excluded as "he was never subject to cross-examination," "gave no sworn testimony," and is "permanently and irrevocably unavailable as a witness."[4] Second, Defendant argues that the Government's redacted police reports (Exhibits 16, 17, and 18) should be excluded because they are inadmissible hearsay.[5] Moreover, Defendant argues that five social media screen grabs (Exhibit 47) "must be excluded for lack of foundation, lack of authentication, and because the photographs are not probative and are substantially prejudicial."[6] Finally, Defendant argues that law enforcement testimony regarding a confidential source's statement about Defendant fleeing 304 Morton Street must be excluded.[7]

The parties briefed all relevant issues, and the matter is ripe.

---

[2] [Id.].
[3] [Doc. No. 88].
[4] [Doc. No. 89, p. 2].
[5] [Doc. No. 91, p. 3].
[6] [Id. at p. 5].
[7] [Id. at p. 11].

## II.    Law and Analysis

### A.    Standard of Review

Motions in limine are well-established pre-trial motions that play an important role. They prohibit opposing counsel from "mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *Vaughn v. Hobby Lobby Stores, Inc.*, 539 F. Supp. 3d 577, 582 (W.D. La. 2021).

Motions in limine are, however, frequently made abstractly and in anticipation of a "hypothetical circumstance" that may never develop at trial. *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980). Therefore, they should "rarely" be used to "exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Luv N' Care v. Laurain*, No. 16-CV-777, 2021 WL 3440623, at *6 (W.D. La. Aug. 5, 2021). Instead, courts should only exclude evidence that is "clearly inadmissible on all potential grounds." *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020). Finally, a ruling on a motion in limine is not an ultimate ruling on the admissibility of the evidence, and the Court may alter a prior ruling on admissibility as the case unfolds. *See Luce v. United States*, 469 U.S. 38, 41–42 (1984).

### B.    Merits

The Court first analyzes Defendant's challenges to any statements by or references to Nelson and a separate confidential informant's statement to law enforcement. Then, it examines his arguments on the redacted police reports

Page **3** of **12**

(Exhibits 16, 17, and 18). Third, the Court addresses the challenge to Government Exhibit 47, the photographs.

### 1. James Nelson and a Separate Confidential Informant's Statements

Defendant's first Motion argues, almost entirely, that any statements or references made by or about Nelson should be excluded.[8] Additionally, Defendant's second Motion addresses, in part, statements made directly to law enforcement officers by another confidential informant and sets forth arguments for why those statements should likewise be excluded.[9]

Nelson, a confidential informant, was arrested and interrogated by law enforcement and allegedly offered leniency in exchange for providing information to the Government. During the investigation, Nelson identified Defendant as "Duck" and stated that Duck was the source from whom he obtained narcotics. Based entirely on Nelson's statements, the Drug Enforcement Administration secured a search warrant for 304 Morton Street. When officers executed the warrant, they recovered Defendant's cellphone and laptop and determined that the residence was owned by Defendant's mother. Nelson later died and was never subject to cross-examination or sworn testimony. Law enforcement also claims that another confidential informant stated Defendant was observed jumping from a window at 304 Morton Street before agents surrounded the residence.

---

[8] [Doc. No. 89].
[9] [Doc. No. 91, p. 11].

Defendant argues that all testimony from Nelson, and any statements he may have made to law enforcement officers should be excluded.[10] The Government agrees that "Nelson's statements are unquestionably testimonial, and his death renders those statements inaccessible."[11] The Government further agrees and asserts that it does not intend to solicit testimony regarding any flight from the residence.[12] Thus, the Motion is **GRANTED**, and any detailed references to Nelson or Defendant's flight from the residence are excluded. However, the Government states that it intends to elicit testimony regarding the officers' assignment to investigate narcotics distribution in Monroe, as well as what officers sought and obtained during the execution of the search warrant at 304 Morton Street, solely to provide context to the jury and without reference to Nelson. The Court agrees that such testimony is permissible, so long as it remains limited in scope and does not elicit any statements made by Nelson.

Accordingly, Defendant's first Motion [Doc. No. 89] is **GRANTED** to the extent that it seeks to preclude any statements from Nelson. Moreover, Defendant's second Motion [Doc. No. 91] is **GRANTED** to the extent of a separate confidential informant's statements regarding a man jumping out of a window.

### 2.    Exhibits 16, 17, and 18

Defendant argues that the Government's Exhibits 16, 17, and 18, which are redacted police reports, must be excluded as inadmissible hearsay and are unfairly

---

[10] [Doc. No. 89, p. 9]; [Doc. No. 91, p. 11].
[11] [Doc. No. 96, p. 2].
[12] [Id. at p. 11].

prejudicial.[13] Defendant further argues that Exhibit 16 is inadmissible as prior uncharged acts without Rule 404(b) notice.[14] The Government "largely agrees with defense counsel and does not intend to (under present circumstances) solicit testimony regarding these police reports."[15]

Accordingly, Defendant's second Motion as to this issue is **GRANTED**, and the redacted police reports are excluded.

### 3.    Exhibit 47 (Photographs)

Defendant contends that Government Exhibit 47, consisting of five photographs obtained from Defendant's alleged social media, should be excluded because the photographs lack proper foundation and authentication, and because any probative value is substantially outweighed by the danger of unfair prejudice.[16]  In opposition, the Government argues that "the photographs can and will be properly authenticated and that testimony from Government witnesses will satisfy the foundational and evidentiary requirements for admission."[17]

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies Rule 901(a), such as testimony of a witness with knowledge. *Id.* 901(b)(1). Relevant here, "a witness

---

[13] [Doc. No. 91, p. 2].
[14] [Id.].
[15] [Doc. No. 96, p. 2].
[16] [Doc. No. 91, p. 5].
[17] [Doc. No. 96, p. 3].

qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *United States v. Okulaja*, 21 F.4th 338, 344–45 (5th Cir. 2021). A proponent's burden to authenticate evidence is low. *See United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015). Moreover, "[t]his Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence." *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989).

Defendant cites to *United States v. Winters* to support his proposition that the photographs should be excluded for lack of foundation. 530 F. App'x 390 (5th Cir. 2013). In *Winters*, the Fifth Circuit held that an officer's testimony that he found photos on the defendant's social media was insufficient because "a photograph's appearance on a personal webpage does not by itself establish that the owner of the page possessed or controlled the items pictured." *Id.* at 395. Thus, at bottom, *Winters* stands for the principle that the government, as the proponent of a photo posted on the defendant's social media account, must authenticate the assertedly relevant contents of the photo—even when the attribution of the photo to the defendant's social media account is not in question.

First, regarding the account name, the witness can testify that a laptop recovered from 304 Morton Street displayed the username "Ducky Montana" on its home screen, together with a photograph of the Defendant, matching the username associated with the social media account from which the social media photographs were obtained. This provides a clear connection between the evidence recovered at

304 Morton Street (the laptop) and Defendant's social media presence. However, the Government must also authenticate the contents of the photos. *See id.*

With respect to Photographs 1 and 2, which depict the Defendant's face, the officers can authenticate the images by testifying that they investigated narcotics distribution in Monroe and became familiar with the Defendant's appearance through their surveillance and monitoring of the Defendant during that investigation. In addition to identifying Defendant in the two photographs, the officers can also authenticate the objects depicted therein, including the recording equipment, the laptop, and the neon blue "Dream" sign (photograph 2), which were located at 304 Morton Street during the search warrant. In contrast to *Winters*, where the Court found the photographs inadmissible because the authenticating witness could neither identify the objects depicted nor establish that the defendant exercised control over those items, the Government can establish such here because the authenticating witness is familiar with Defendant and the items in the photographs. Further, in *United States v. Cash*, the Fifth Circuit held that Officer Jorgensen properly authenticated photographs depicting heroin and cocaine. No. 24-10243, 2025 WL 2268249 at *4 (5th Cir. Aug. 8, 2025). Although Officer Jorgensen was not present when the photographs were taken, he was able to identify the items depicted because he observed the defendant discard those same items from a vehicle during a police pursuit. *Id.* Similarly, here, although the testifying officer did not witness the social media photographs being taken, he can authenticate the items depicted (recording

equipment, dream sign, and laptop) because they appeared in the same condition and position as when officers executed the search warrant at 304 Morton Street.

The Court, however, does not agree with the Government's proposed basis for authenticating Photographs 3 through 5. In those images, no face is visible, and the purported recording equipment is not clearly depicted. Rather, the photographs show only a person from the shoulders and/or waist down wearing a blue "I'm JB" sweatshirt. Under the present circumstances, an officer cannot authenticate or reliably identify the individual depicted as the Defendant, nor can the officer testify that the photographs portray the recording equipment recovered from 304 Morton Street, because the individual obscures the alleged equipment from view. *See Winters*, 530 F. App'x at 395. Accordingly, unless the Government establishes some other form for authentication as to Photographs 3 through 5, the Defendant's second Motion as to these photographs is **GRANTED**.

As authentication is a "condition precedent to the admission of evidence," the Court now moves to the discussion of Photographs 1 & 2's probative value versus the prejudicial effect. *United States v. Barnes*, 803 F.3d 209, 217 (5th Cir. 2015). However, as always, relevance must be determined first. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under the Federal Rules, relevant evidence is admissible unless otherwise proscribed. Fed. R. Evid. 402. But relevant

evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* 403.

It is relevant that Defendant was observed at the location where narcotics were later recovered, and the Government may therefore introduce Photographs 1 & 2 at trial for that limited purpose. The Government cannot, however, argue that the narcotics were present at the residence at the time the photographs were taken. Because the narcotics do not appear in the photographs and because the Government provides no time stamp of the photographs, the Government cannot rely on the photographs alone to connect the narcotics found at 304 Morton Street to Defendant.

Defendant argues that even if the photographs are relevant, the prejudicial effect substantially outweighs any probative value.[18] The prejudice, Defendant argues, is that "the jury will use these images to draw impermissible character references – that [Defendant] is associated with a lifestyle or subculture [hip-hop culture] that the jury may perceive as indicative of criminality – is substantial and cannot be cured by limiting instruction."[19] The Government argues that just because "the defendant creates music is not a basis by which a jury will assume he is of a criminal nature."[20] The Government is correct.

Probative value is the extent to which evidence tends to prove a relevant fact at issue. In this case, one relevant fact is that Defendant was present or associated with 304 Morton Street at some point in time. Photographs 1 and 2 are probative of

---

[18] [Doc. No. 91, p. 10].
[19] [Id.].
[20] [Doc. No. 96, p. 10].

that fact because they depict recording equipment located at that address. Defendant's claim that the recording equipment is unfairly prejudicial because jurors might associate music production with criminal activity is unpersuasive. Defendant compares this case to *Winters* and states, "because the content depicted in the photographs could not be tied to the defendant or the charged conduct, the photos had 'little probative value as to [the] defendant's involvement' in the offense, while the pictures were 'highly prejudicial.'"[21] *Winters*, 530 F. A'ppx at 395–96. But the Government correctly distinguishes this case from *Winters* on this point. In *Winters*, the photographs were prejudicial because they depicted drugs. Here, by contrast, the photographs show the Defendant making music at a location where drugs were later discovered. As previously stated, the Government may not argue that the photographs directly connect Defendant to the drugs found at the location. Rather, the Government may only use the photographs to establish that the Defendant was present at that location at some point in time.

## III.    Conclusion

For the above-stated reasons,

**IT IS ORDERED** that Defendant's first Motion in Limine [Doc. No. 89] is **GRANTED** to the extent that it seeks to preclude any statements from Nelson.

**IT IS FURTHER ORDERED** that Defendant's second Motion in Limine [Doc. No. 91] is **GRANTED IN PART** and **DENIED IN PART.** The Motion is **GRANTED** as to a separate confidential informant's statements regarding a man jumping out of

---

[21] [Doc. No. 91, p. 10].

Page **11** of **12**

a window, redacted police reports, and the Government's Exhibit 47 (Photographs 3-5), and is **DENIED** as to all other issues.

MONROE, LOUISIANA, this 15th day of May 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE